UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BORU GUYE WAKO, JR.,<br><br>Defendant. | 4:23-CR-40128-KES<br><br><br>ORDER DENYING MOTION TO DISMISS |

Defendant, Boru Guye Wako, Jr., moves to dismiss Count 2 of the Indictment in the above-entitled matter that charges him with receipt of a firearm while under felony indictment in violation of 18 U.S.C. § 922(n). Docket 1; Docket 35. Wako alleges that § 922(n), facially and as-applied, violates his Second Amendment right to bear arms under the Supreme Court's historical traditions analysis in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Docket 36. The government opposes the motion and argues that § 922(n) is constitutional. Docket 39. Wako replied to the government's response. Docket 40. For the reasons below, Wako's motion to dismiss is denied.

**ALLEGED FACTS**

For the purposes of this motion to dismiss, the court considers the following allegations, which were summarized by the parties in their briefs. *See* Dockets 36 & 39. But the court reaffirms that Wako remains innocent of the

charges against him, and the court takes no position on the question of his guilt, or the veracity of any factual allegation presented by the government. *See Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary[.]") (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).

In March of 2023, Sioux Falls law enforcement attempted to pull over a vehicle that matched the description of a recently stolen vehicle. Docket 39 at 1-2. Instead of pursuing the fleeing vehicle in a residential area, law enforcement waited nearby, anticipating the vehicle's return. *Id.* Indeed, it returned, and law enforcement watched as a man, later identified as Wako, exited the vehicle and fled the scene on foot. *Id.* at 2. Law enforcement saw Wako enter the driver's side of a different vehicle and drive away. *Id.* Law enforcement then returned to the allegedly stolen vehicle Wako had abandoned and searched it. *Id.* On the driver's side door, police found a handgun that was later identified as stolen. *Id.*

At the time of this incident, Wako was under indictment by the State of South Dakota for two felony crimes. Docket 39 at 3 n.1 (stating Wako's indictments were filed in 2021). Wako was charged under state law with Possession of a Controlled Substance, a Class 5 felony; and Aggravated Eluding – Inherent Risk of Death or Injury, a Class 6 felony. *Id.*

In November of 2023, a federal indictment was returned against Wako charging him with possession of a firearm by a prohibited person in violation of

18 U.S.C. § 922(g)(1) and receipt of a firearm while under indictment in violation of § 922(n). Docket 1. The court subsequently granted the government's motion to dismiss Count 1 that had charged Wako under § 922(g)(1). Docket 25. The only count remaining is Count 2, charging Wako under § 922(n).

## DISCUSSION

The Second Amendment guarantees an individual's right to possess firearms. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). Although many judges, scholars, and others have long debated the extent of this right, the Supreme Court has clarified that the government cannot restrict the Second Amendment unless "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. It is insufficient to "simply posit that the regulation promotes an important interest." *Id.*

Under *Bruen*, courts now must apply a two-prong test to determine whether a law violates the Second Amendment. *Id.* at 17-18. First, courts ask whether the "Second Amendment's plain text covers an individual's conduct." *Id.* at 17. If it does, then the conduct is presumptively protected by the Second Amendment and the analysis continues to the second prong. *Id.* Second, courts ask whether a given gun restriction is "consistent with the Nation's historical tradition of firearm regulation." *Id.* The burden is on the government to demonstrate a tradition supporting the challenged law. *Id.* The government must "justify its regulation" by showing that the law does not tread on the

3

historical scope of the Second Amendment. *Id.* "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* at 24 (citation omitted).

Wako presents both a facial and an as-applied challenge to § 922(n). *See* Docket 36 at 2. A facial challenge presents a claim " 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This is a "heavy burden" to meet, *Salerno*, 481 U.S. at 745, and the Supreme Court "has therefore made facial challenges hard to win." *Moody v. NetChoice*, LLC, 144 S. Ct. 2383, 2397 (2024).

Conversely, "[a]n as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." *United States v. Hall*, 44 F.4th 799, 805 n.5 (8th Cir. 2022) (quoting *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 n.5 (8th Cir. 2021)). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Turtle Island Foods, SPC*, 992 F.3d at 700 n.5 (quoting *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004)).

I.      **18 U.S.C. § 922(n)**

Section 922(n) provides that "[i]t shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to . . . receive any firearm or ammunition which has been shipped or

4

transported in interstate or foreign commerce." 18 U.S.C. § 922(n). Wako argues that his conduct of "willfully receiving" a firearm is covered under the Second Amendment's plain text and is thus presumptively constitutional. Docket 36 at 2-3. Because the court ultimately upholds the constitutionality of § 922(n) and there is a "strong presumption that the Second Amendment right . . . belongs to all Americans," *Heller*, 554 U.S. at 581, the court assumes without deciding that Wako's Second Amendment right to keep and bear arms necessarily encompasses the right to receive arms.

Under the second prong of the analysis, Wako contends the government cannot carry its burden to justify that § 922(n) is consistent with this Nation's historical tradition of firearm regulation. Docket 36 at 3-9. Wako relies on other, non-binding authority from district courts in other circuits,[1] and the Supreme Court's recent decision in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), for upholding the proposition that "[a]n individual found by *a court* to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." Docket 36 at 4 (quoting *Rahimi*, 144 S. Ct. at 1903) (emphasis added). Because a court has not yet

---

[1] Wako cites to *United States v. McDaniel*, 2024 WL 3964339 (E.D. Wisc. 2024) (striking down § 922(n) as applied to defendant); *United States v. Hicks*, 649 F. Supp. 3d 357 (W.D. Tex. 2023) (striking down § 922(n) as unconstitutional); *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023) (stating that some applications of § 922(n) could or would flunk the *Bruen* standard); *United States v. Quiroz*, 629 F. Supp. 3d 511 (W.D. Tex. 2022) (striking down § 922(n) as unconstitutional); *United States v. Stambaugh*, 641 F. Supp. 3d 1185 (W.D. Ok. 2022) (same). Docket 36 at 3-8.

5

deemed him a credible threat to others, Wako asserts that temporarily disarming him is inconsistent with *Rahimi* and the historical traditions of the Second Amendment. *Id.* In addition, Wako argues he is presumed innocent and that "§ 922(n) puts the cart before the horse by disarming a citizen before their conviction, contrary to the presumption of innocence." *Id.* at 6. The court is not persuaded, however, that § 922(n) is unconstitutional. Section 922(n)'s prohibition on receipt of a firearm while under felony indictment is consistent with historical firearms regulation. Several reasons support this conclusion.

First, the Supreme Court noted that the historical analytical focus should not cast doubt on "longstanding prohibitions" of firearms possession (e.g., concerning felons and the mentally ill), *Heller*, 554 U.S. at 626-27, and further observed that the examples it listed did "not purport to be exhaustive[,]" *id.* at 627 n.26; *see also Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations."); *id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns."). Thus, neither *Heller* nor *Bruen* advise that existing firearms regulations should be utterly abandoned.

Second, *Bruen* instructs that courts, in conducting a Second Amendment analysis, should identify historical analogues. *Id.* at 30. Courts need not identify a "historical twin." *Id.* (emphasis removed). Thus, it is not dispositive when a founding-era law that specifically bars receipt of a firearm by a person under felony indictment cannot be identified.

6

There are historical analogues sufficiently apposite to sustain § 922(n)'s constitutionality. *See United States v. Rowson*, 652 F. Supp. 3d 436, 465-72 (S.D.N.Y. 2023) (finding two historical analogues sufficient under the *Bruen* methodology: (1) "the Nation's long line of laws disarming persons perceived as dangerous"; and (2) historical surety laws). For example, the historical surety statutes discussed in *Bruen* are sufficiently analogous to § 922(n) because those statutes generally provided that an individual's Second Amendment right could be "burdened only if another could make out a specific showing of 'reasonable cause to fear an injury, or breach of the peace.' "[2]  *Bruen*, 597 U.S. at 56 (quoting Mass. Rev. Stat., ch. 134, § 16 (1836)). Section 922(n) likewise only burdens one's Second Amendment right after a grand jury has found probable cause to return an indictment. The surety laws discussed in *Bruen* are therefore proper historical analogues for § 922(n). *See, e.g.*, *United States v. Simien*, 655 F. Supp. 3d 540, 552 (W.D. Tex. 2023) ("[Section] 922(n) is consistent with historical traditions of firearms restrictions in the form of surety laws.").[3]

---

[2] The historical surety laws alluded to here required certain individuals to post bond before carrying weapons in public. *Bruen*, 597 U.S. at 55; *see also Rahimi*, 144 S. Ct. at 1900 ("[T]he law authorized magistrates to require individuals suspected of future misbehavior to post a bond.").

[3] In addition, "[i]n the view of at least some members of the founding generation, disarming select groups for the sake of public safety was compatible with the right to arms specifically and with the idea of liberty generally." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F. 3d 185, 200 (5th Cir. 2012), *abrogated on other grounds by Bruen*, 597 U.S. at 19 n.4)); *see also United States v. Perez-Garcia*, 628 F. Supp. 3d 1046, 1054 (S.D. Cal. 2022) ("Regulations limiting or prohibiting access to firearms by specific groups in the interest of public safety have been

Third, the rationale from the Eighth Circuit's recent decision upholding § 922(g)(1)'s constitutionality can be applied to § 922(n)'s prohibition on those under felony indictment from receiving firearms. In *United States v. Jackson*, the Eighth Circuit reaffirmed the constitutionality of § 922(g)(1)[4] in light of the Supreme Court's decision in *Rahimi*. 2024 WL 3711155, at *7 (8th Cir. Aug. 8, 2024). There, the Eighth Circuit stated that "legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms," including those "who deviated from legal norms or persons who presented an unacceptable risk of dangerousness." *Id.* at *7. That rationale equally applies to § 922(n). Both provisions restrict individuals' access to firearms who have deviated from legal norms (in the view of a grand jury), and Congress enacted § 922(n) because, presumably, it believed that those under felony indictment present an unacceptable risk of dangerousness. *See United States v. Khatib*, 2012 WL 6086862, at *4 (E.D. Wis. Dec. 6, 2012) (explaining that the pendency of indictment is "a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or others."); *United States v. Laurent*, 861 F. Supp. 2d 71, 102 (E.D.N.Y. 2011) ("[I]f the individual only received a gun after

---

part of the Nation's historical tradition since the earliest days of our Nation's founding."). This further supports the conclusion that § 922(n) aligns with this Nation's history and tradition of regulating the possession of firearms.

[4] Section 922(g)(1) prohibits the possession of firearms or ammunition by anyone "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year[.]"

8

indictment, this conduct raises the suspicion that his purpose is not self-defense in the home, but further crime").

Fourth, it should be noted that § 922(n)'s prohibition on receipt of a firearm is only temporary and does not proscribe someone under felony indictment from possessing a firearm if they are acquitted. *See United States v. Kelly*, 2022 WL 17336578, at *5 (M.D. Tenn. Nov. 16, 2022) (describing how § 922(n) "lasts only from indictment to conviction or acquittal" and is therefore, "by definition . . . temporary"); *see also United States v. Posada*, 670 F. Supp. 3d 402, 410 (W.D. Tex. 2023) (" 'In order to bridge historical gaps', *Bruen* allows courts to 'engage in . . . common sense reasoning—that, for example, heavy restrictions are typically more problematic than light ones.' . . . And historical detention laws were far more burdensome than § 922(n) is.") (quoting *Kelly*, 2022 WL 17336578, at *6) (cleaned up).

In sum, the court holds that § 922(n) is constitutional. This conclusion aligns with many lower courts that have addressed constitutional challenges to § 922(n).[5] *See United States v. Walker*, 2024 WL 4024204, at *4 (D. Minn Sept. 3, 2024); *United States v. Weathers*, 2024 WL 2871356, at *19 (N.D. Ga. Mar.

---

[5] There are concededly some courts that have found § 922(n)'s prohibition unconstitutional. *See United States v. Holden*, 638 F. Supp. 3d 931 (N.D. Ind. 2022), *rev'd on other grounds*, 70 F.4th 1015 (7th Cir. 2023); *McDaniel*, 2024 WL 3964339; *Stambaugh*, 641 F. Supp. 3d at 1185; *Hicks*, 649 F. Supp. 3d at 357; *Quiroz*, 629 F. Supp. 3d at 511. To the court's knowledge, the only post-*Bruen* decision by a circuit court that addresses this issue is from the Fifth Circuit, where a panel rejected a challenge to the constitutionality of § 922(n) on plain error review. *See United States v. Avila*, 2022 WL 17832287, at *2 (5th Cir. Dec. 21, 2022).

9

11, 2024); *Kelly*, 2022 WL 17336578 at *6; *Rowson*, 652 F. Supp. 3d at 472; *Simien*, 655 F. Supp. 3d at 552; *United States v. Fabiano*, 2023 WL 9597783, at *10 (N.D. Ga. Nov. 21, 2023); *United States v. Bartucci*, 658 F. Supp. 3d 794, 803-08 (E.D. Cal. 2023); *United States v. Jackson*, 661 F. Supp. 3d 392, 415 (D. Md. 2023); *United States v. Smith*, 2023 WL 3012007, at *4 (S.D. Ga. Mar. 29, 2023); *United States v. Gore*, 2023 WL 2141032, at *4 (S.D. Ohio Feb. 21, 2023); *Posada*, 670 F. Supp. 3d at 411; *United States v. Kays*, 624 F. Supp. 3d 1262, 1268 (W.D. Okla. 2022).

Wako also argues that § 922(n) is unconstitutional as applied to him because the state-court offenses Wako is charged with are "both non-violent felonies as defined by South Dakota law." Docket 36 at 1. The court, however, must hold Wako's as-applied challenge in abeyance until after trial.

In general, "pretrial motions should be ruled on unless there is 'good cause to defer a ruling.'" *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016) (quoting Fed. R. Crim. P. 12(d)). The Eighth Circuit has held that "[g]ood cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that fall within the province of the ultimate finder of fact." *Id.*; *see United States v. Covington*, 395 U.S. 57, 60 (1969) (stating that a motion is capable of pretrial determination "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity" of the motion).

Here, there is an undeveloped factual record. Although the government provides an account of the facts, *see* Docket 39 at 1-3, Wako offers essentially

10

no insight into his version of the underlying events, *see* Docket 37. Regardless, the parties' briefs do not establish a fully developed factual record. Further, Wako declares that he "is not conceding that he was under felony indictment or in possession of a firearm" and intends to challenge this classification later during the proceedings. *Id.* at 1 n.1. Although courts may "sometimes make factual findings when ruling on pretrial motions[,]" *Turner*, 842 F.3d at 605, courts may "not make factual findings when an issue is 'inevitably bound up with evidence about the alleged offense itself[,]' " *id.* (quoting *United States v. Grimmett*, 150 F.3d 958, 962 (8th Cir. 1998)). Because Wako's assertion will require an inquiry into the "facts surrounding the commission of the alleged offense," the court should not rule on Wako's as-applied challenge without a "trial on the merits." *Id.* at 605; Fed. R. Crim P. 12(b)(1).

One final issue. Wako argues that he is presumed innocent and that § 922(n) curtails this right before a jury determines his guilt or innocence. *See* Docket 36 at 6. The presumption of innocence, however, is a narrow doctrine that only applies at the criminal trial itself to define the government's burden of proof. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). The presumption of innocence "has no application to a determination of the rights of a [defendant] . . . before his trial has even begun." *Id.* Wako's argument thus fails.

11

## CONCLUSION

18 U.S.C. § 922(n) is constitutional on its face under *Bruen* and Wako's as-applied challenge must be held in abeyance until after trial. It is thus

ORDERED that Wako's motion to dismiss Count 2 of the Indictment (Docket 35) is denied.

Dated October 1, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE